UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

GRANT WINTHROP,

    *Plaintiff,*

v.                             Civil Action No. _____

Spring Creek Ranch Homeowners Association,
Peter Lamelas, an individual,
Tim Gardiner, an individual
Paul Pescatello, an individual
Leslie Schilling, *aka* Leslie Tang, an individual
George Kallop, an individual
David Silva, an individual
Marc D. Segal, an individual, and
Mark Sullivan, an individual

    *Defendants.*
_____/

## **COMPLAINT**

1.     This is an action for declaratory and injunctive relief, compensatory damages, and punitive damages arising from Defendants' unlawful demand for records relating to Plaintiff's service dog in violation of 28 C.F.R. § 36.302(c)(6); coercing Plaintiff to move in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* and the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq.*, by falsely claiming he was not allowed to have a service dog in certain public spaces of the Spring Creek Homeowners Association, which operates as a public accommodation and by unlawfully demanding that he submit medical documentation to the HOA

1

with no assurance of confidentially for the subjective and unlawful review of his medical need to have a service dog in his residence.

2.     Defendant Spring Creek Ranch Homeowners Association (hereinafter "HOA") operates a community near Jackson, Wyoming which includes three hotels open to the public: Spring Creek Ranch, Amangani, and Hotel Yellowstone.

3.     Due to the interrelation of the HOA and the aforementioned hotels, the community is subject to the requirements of the ADA.

4.     Despite this, Defendants, through counsel, falsely claimed—despite knowledge to the contrary—to have an exemption from the ADA based on an agreement with the U.S. Department of Justice (DOJ), and demanded records and confidential medical information from Plaintiff as a pre-condition to considering whether Plaintiff would be permitted a service dog at all, thus interfering with Plaintiff's housing contract and contractual rights to use facilities.

5.     Plaintiff had relied on the HOA being subject to the ADA when he moved there, including the approval Plaintiff received in 2021 to have a service dog, which the HOA effectively rescinded when they demanded he submit documents in contravention of 28 C.F.R. § 36.302(c)(2) and claimed no knowledge of the prior approval.

6.      Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability. However, in the instant case they did not.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this action arises under federal law.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this action occurred in the District of Wyoming.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for related state law claims.

## PARTIES

10.      Plaintiff Grant Winthrop is an individual with a disability as defined by the ADA and FHA, and was a resident within a property managed or controlled by Defendant Spring Creek Ranch Homeowners Association.

11.      Spring Creek HOA is a corporate entity doing business in Wyoming that operates an HOA with three hotels and other public accommodations within its confines.

12.      Peter Lamalas is a member of the HOA board who is a resident of Florida.

13.      Tim Gardiner is a member of the HOA board who is a resident of Wyoming residing in New York.

3

14. Paul Pescatello is a member of the HOA board who is a resident of Wyoming.

15. Leslie Schilling, aka Leslie Tang, is a member of the HOA board who is a resident of California and serves as a corporate officer of Spring Creek HOA.

16. George Kallop is a member of the HOA board who is a resident of Florida and serves as a corporate officer of Spring Creek HOA.

17. David Silva is a member of the HOA board who is a resident of Utah.

18. Marc D. Segal was a member of the HOA board during the time the HOA adopted the policy in dispute and is a resident of Wyoming residing in Vermont.

19. Mark Sullivan is an individual residing in Wyoming who has acted as an administrator for the HOA performing such tasks as HOA elections and HOA correspondence. Specifically, for the instant complaint, he administers the disputed dog policy and is responsible for retaining private medical information he demands under color of federal law.

## FACTUAL BACKGROUND

20. Plaintiff purchased a condominium unit at Spring Creek Ranch in 2021 and became a resident of Wyoming in November of that year.

21. This purchase followed approximately a year-long search for suitable housing that would provide Plaintiff, as a person with a disability,

4

reasonable access to facilities, consistent with the requirements of the Americans with Disabilities Act ("ADA").

22.    The condominium served as Plaintiff's sole and full-time residence until he was forced to relocate in 2024.

23.    When Plaintiff purchased the condominium, the Spring Creek Ranch community was managed by Spring Creek Ranch Management.

24.    Plaintiff has a disability as defined under both the Americans with Disabilities Act and the Fair Housing Act.

25.    Plaintiff considered multiple housing options but ultimately selected a residence governed by Title III of the Americans with Disabilities Act (ADA), in part because he sought full and equal access to all facilities as a person with a disability.

26.    Plaintiff's condominium at Spring Creek Ranch is zoned for short-term rental, and other practically identical units are offered to the public as hotel rooms, constituting a place of public accommodation.

27.    Prior to purchasing his condominium in 2021, Plaintiff received approval from Spring Creek Ranch Management Company for a service dog and relied on that approval in deciding to move into the community—an approval that Spring Creek Ranch Management Company has continued to honor, despite the contrary position now taken by Defendants. Notably, Plaintiff was not required to seek such approval under the ADA, but did so in good faith to avoid confusion and future controversy.

5

28.     Spring Creek Ranch holds itself out as a resort property. Spring Creek Ranch Management concedes they are subject to the ADA as a public accommodation despite contrary position of the Defendants.

29.     As noted, Plaintiff was not obligated to obtain permission for his service dog; nevertheless, he proactively sought confirmation to avoid any potential misunderstandings or disputes prior to purchasing a condominium within Spring Creek Ranch.

30.     Stephen Price, who co-owns Spring Creek Management and is on the HOA board, acknowledged and approved Plaintiff's service dog in 2021 and notified the HOA board and counsel accordingly.

31.     Despite this, the HOA claims Plaintiff never registered his service animal, even though he notified the HOA and he is not required to register his service animal under the ADA.

32.     The HOA board members personally enforce the policy. Specifically, on March 14, 2024 Defendant Leslie Schilling in an unprivileged email raised concerns about HOA board members personally enforcing the dog policy suggesting instead that "whoever observes dogs [should] call the sheriff's department rather than taking the matter into their own hands.  When we take matters into our own hands it increases the risk." Individual board members were tasked with enforcing the rules and the board did not as a whole condemn this.

33.     Defendant HOA encompasses three hotels on the premises and affirmatively holds itself out to the public as a provider of lodging and related amenities, including but not limited to public restaurants, bars, equine facilities, and spas. It advertises and rents accommodations to the public. As such, it qualifies as a place of public accommodation under Title III of the ADA.

34.     The HOA's common areas include swimming pools, hot tubs, tennis courts, paddleboard areas, stable buildings, and adjoining paddocks, which are all open to the general public and are regularly used by non-owners from the public who can access them. These facilities form part of the hotels' public-facing operations and are therefore subject to Title III of the ADA.

35.     Plaintiff resided in a dwelling within Spring Creek Ranch and relies on a trained service dog as a reasonable accommodation for his disability, as defined under the Americans with Disabilities Act and the Fair Housing Act.

36.     In October 2022, Defendant Marc Segal, then a member of the HOA board, requested that Plaintiff provide a letter for submission to the U.S. Department of Housing and Urban Development ("HUD") describing the process by which his service dog had been approved, in connection with efforts to resolve a complaint filed by Scott Segal and Robin Davis.

37.     On information and belief based on the prior DOJ charge packet in the *Segal and Davis v. Spring Creek* complaint, Scott Segal and Robin

7

Davis had filed a complaint regarding their emotional support animals following confrontations with the HOA board.

38.     In October 2022, Plaintiff provided the requested letter to Defendant Marc Segal for the HOA board, confirming that Spring Creek Ranch Management had approved his service dog and that, to date, no issues had arisen.

39.     As a result of that letter, and as of October 2022 at the latest, Defendants had constructive knowledge of Plaintiff's service dog, its formal approval by their agents in 2021, and their lack of objection at that time.

40.     Defendants used and relied upon Plaintiff's letter as part of their response to the prior HUD complaint brought by Scott Segal and Robin Davis. Plaintiff submitted the letter to Defendant Marc Segal, who then, on information and belief, provided it to the HOA's legal counsel for submission to HUD and/or the U.S. Department of Justice in connection with resolving the Segal-Davis matter.

41.     The HOA's policy, which was adopted after Plaintiff moved to Spring Creek Ranch, provides in part: "Assistance Animals  shall not be allowed in the Spring Creek Ranch common area swimming pool(s) or hot tub(s), within the fenced-in areas of the tennis courts and paddle board areas, or inside the stable buildings or the adjoining paddocks.

8

42.    The term "Assistance Animals" is a broad designation that encompasses emotional support animals, service dogs, service miniature horses, and therapy animals.

43.    The HOA's new policy fails to distinguish between emotional support animals and service dogs, despite the clear legal differences between these categories under the ADA and FHA. Instead, it uses the broad term "assistance animal," which improperly conflates service dogs, service miniature horses, emotional support animals, and therapy animals—each of which serves a different purpose and is granted distinct legal protections and exemptions under federal law.

44.    As previously noted, the HOA's swimming pools, hot tubs, tennis courts, paddleboard areas, stable buildings, and adjoining paddocks are open to the general public and form part of Spring Creek Ranch's public-facing amenities. These areas qualify as places of public accommodation and are therefore subject to the accessibility requirements of Title III of the ADA.

45.    For example, on May 10, 2025, Spring Creek Ranch will host an event titled "Discocowboy Night," with tickets sold to the general public for $25. The event will take place on property within the HOA and will include access to the aforementioned common areas. This is one of many such public events that have been held on the premises for years, further demonstrating the property's operation as a public accommodation.

9

46. This event is not uncommon, with Spring Creek Ranch hosting upwards of twenty public events per summer such as weddings, corporate events and other celebrations. All of which are open to the public, not just owners of property or hotel guests.

47. Despite the public-facing nature of the property, Defendant HOA has posted signage at the entrance to the community stating that all dogs are prohibited, without any exception noted for service dogs.

48. Defendants currently maintain a written policy that expressly prohibits all dogs—including service dogs—from certain public areas within the hotel facilities.

49. In February 2023, Plaintiff was approached in a hostile and threatening manner by an armed individual who refused to identify himself, but stated that he worked for the HOA board. The individual questioned Plaintiff about his service dog and asserted that dogs were not permitted in public spaces under any circumstances, regardless of status—an assertion that, on its face, directly contradicts the requirements of the ADA.

50. This encounter caused Plaintiff significant emotional distress and made him feel unsafe and unwelcome at Spring Creek Ranch. Following the incident, Plaintiff became increasingly apprehensive around members of the HOA community and began avoiding crowded common areas and public interactions out of concern for further hostility or confrontation.

51.    Plaintiff notified Derek Goodson of Spring Creek Ranch Management about the incident. Mr. Goodson confirmed that the individual involved was a representative of the HOA board and not an employee of Spring Creek Management. He further stated that Spring Creek Management maintained a policy against harassing individuals with service dogs, but acknowledged that the HOA board harassed individuals with service dogs, as the HOA members operated under the theory that HOA property exempted under the ADA because it predated the statute and was a wildlife refuge area.

52.    Derek Goodson informed the HOA board that Plaintiff had a *bona fide* service dog and notified them of the incident. He also conveyed that, as a result of the hostile encounter, Plaintiff had rescinded his previously submitted letter to HUD, which had been provided in support of the board's efforts to settle the Scott Segal and Robin Davis complaint.

53.    Later in February 2023, following the encounter with the unidentified board official, Plaintiff informed Defendant Marc Segal that he was rescinding the letter previously provided to him for submission to HUD. Plaintiff explained that he could no longer support the HOA's position due to its discriminatory and hostile treatment concerning his service dog.

54.    In October 2023, several individuals approached Plaintiff and stated that dogs were not allowed on the property. When Plaintiff explained that his dog was a service animal, they responded that there were no

exceptions, that he needed to leave immediately, and that the board would be notified and Plaintiff would be severely fined if he did not remove himself and the dog from the public area. Not wanting to escalate the situation given that prior HOA personnel had been armed, or risk a potentially dangerous confrontation, Plaintiff returned to his condominium.

55.     This incident once again caused Plaintiff significant concern and a sense of insecurity within the community, reinforcing his fear of further confrontation or retaliation.

56.     On November 14, 2023, Defendant Mark Sullivan sent Plaintiff a specific form and stated that Plaintiff was required to complete it in order to determine whether his service dog would be permitted on the property.

57.     Plaintiff responded that he believed the policy was unlawful and could result in litigation.

58.     Specifically, the policy Defendant Mark Sullivan provided to Plaintiff appeared to be inconsistent with the requirements of the ADA, including its limitations on where service dogs could go and with regard to the documentation demands for service animals.

59.     The policy is also inconsistent with the requirements of the FHA.

60.     Under the ADA, public accommodations are not permitted to require documentation or conduct an in-depth analysis of a service animal. They may ask only two questions: (1) whether the animal is a service animal

required because of a disability, and (2) what work or task the animal has been trained to perform.

61.     The email Defendant Mark Sullivan sent Plaintiff on November 14, 2023 asked things other than: (1) whether the animal is a service animal required because of a disability, and (2) what work or task the animal has been trained to perform.

62.     Later that same day, on November 14, 2023, Defendant Mark Sullivan stated in an email to Plaintiff that "these [HOA] rules and the [HOA] policy were both negotiated with, and required by, the Department of Justice in connection with a settlement involving [Scott Segal] . . . and [the policy] has the blessing and consent of the Department of Justice."

63.     Defendant Mark Sullivan intended for Plaintiff to rely on this statement, despite constructively knowing it was false.

64.     On information and belief, Defendant Mark Sullivan made the statement to deter Plaintiff from asserting his rights under the ADA.

65.     By demanding Plaintiff's medical records as a condition for retaining his service dog, Defendants effectively revoked the prior approval upon which Plaintiff had relied since 2021—an approval that Defendants had known about since that time, or at the latest by 2022, and had previously relied upon in resolving the Scott Segal complaint.

66.     In March 2024, Plaintiff was again approached by individuals associated with the HOA board who questioned him regarding his service dog

in front of Plaintiff's contractor who witnessed the interaction. The encounter caused Plaintiff significant distress and reinforced his sense of insecurity when accessing common areas within the HOA.

67.     Then again in March 2024, Defendant Mark Sullivan again sent a demand to Plaintiff's counsel that Plaintiff submit confidential personal information for him to make an apparently subjective determination of whether the HOA would permit Plaintiff's service dog under the ADA. This demand was made despite Plaintiff's prior approval and constituted an improper attempt to impose unlawful conditions on the exercise of Plaintiff's rights under the ADA.

68.     By this time, Plaintiff felt unsafe and unwelcome at Spring Creek Ranch due to the ongoing hostile and discriminatory treatment he experienced as a person with a disability.

69.     As noted before, on March 14, 2024 Defendant Leslie Schilling in an unprivileged email spoke out against HOA board members personally enforcing the dog policy suggesting instead that "whoever observes dogs [should] call the sheriff's department rather than taking the matter into their own hands.  When we take matters into our own hands it increases the risk." This email acknowledges that board members went beyond basic board duties and personally engaged in inherently risky enforcement of their apparently illegal policies.

14

70. As previously noted, Plaintiff was prohibited from accessing public areas of the property with his service dog, not just via the policy, but also by board members or their agents, in clear violation of the ADA, making residence at Spring Creek not only unpleasant, but untenable.

71. Defendants do not apply the same guidelines uniformly to all individuals within the HOA. For example, agents of Defendant David Silva at Amangani adhere to ADA-compliant standards, demonstrating that the HOA board possesses constructive knowledge of its legal obligations and is selectively enforcing those obligations in a discriminatory manner.

72. Another board member, Stephen Price—who owns and operates the Spring Creek Ranch Hotel—likewise does not impose this level of scrutiny on hotel guests with service dogs and adheres to ADA standards. This further illustrates the selective and discriminatory application of policies by the HOA board and their agent Mark Sullivan.

73. On information and belief, Stephen Price informed the HOA board that its actions were in violation of the ADA, but his concerns were disregarded.

74. Defendants variously claimed that the HOA was exempt from the ADA either because the property predated the statute or based on an alleged directive from the Department of Justice. However, Defendants knew or should have known that no such exemption existed or had been issued.

15

75.     On November 18, 2023 Defendant Leslie Schilling sent out a notice stating that "[a]s a requirement of the settlement with HUD over Spring Creek's dog policy we are required to send out these notices to the homeowners." However, once again *per* the letter from HUD, HUD was not a party to the settlement. As such, the HOA board is attempting to make their policy look legitimate by falsely claiming it is part of a government-mandated policy.

76.     In May 2024 David Conine, an owner within the Spring Creek HOA, emailed the board to suggest that they make an exception to the dog policy for service dogs. Defendant Peter Lamelas on behalf of the board repeated the apparently inaccurate statement that "the [HOA] policies that [were] adopted . . . were approved by our lawyers and were actually approved by the U.S. Department of Justice, as part of our settlement."

77.     Peter Lamelas knew or should have known the HOA policies were not "approved by the US Department of Justice" as the settlement between the HOA and Scott Segal and Robin Davis is a private agreement. On information and belief, this shows a willingness on the part of the board to deceive homeowners when it suits them.

78.     In a letter dated June 18, 2024, HUD's Wyoming State Director Mark Feilmeier informed U.S. Representative Eli Crane that "Mr. [Scott] Segal's complaint was resolved through a private party settlement, there was

16

never a federal complaint filed, and neither DOJ nor HUD were parties to that agreement."

79.     In June 2024, Plaintiff learned that Defendants had misrepresented material facts regarding their claimed ADA exemption after he requested that a member of Congress inquire with HUD about the specifics of the purported exemption.

80.     On information and belief, Defendants knowingly coordinated to misrepresent the existence of a Department of Justice exemption in their communications with Plaintiff and others, constituting a concerted effort to deprive him of his rights under the ADA and FHA.

81.     The ADA does not authorize the Department of Justice to exempt public accommodations from their obligations under Title III. DOJ settlements must be consistent with the statute and do not create waivers of legal obligations for third parties. Accordingly, any claim by Defendants that they were exempt from the ADA based on a DOJ settlement is legally baseless and without merit, despite repeated assertions to the contrary by counsel for the HOA and HOA board members.

82.     Even if the Department of Justice had granted an exemption to Defendants—which, on information and belief, it did not—any such exemption would be void as it was procured through fraud. Defendants failed to disclose to the DOJ that Plaintiff had rescinded the letter upon which they

17

claimed to rely, thereby materially misrepresenting the facts to a federal agency.

83.     Even if the Department of Justice had granted an exemption to Defendants—which, on information and belief, it did not—any such exemption stemmed from the settlement between the Spring Creek HOA and Scott Segal and Robin Davis which concerned emotional support animals solely under the Fair Housing Act (FHA) and did not implicate the Americans with Disabilities Act (ADA). Accordingly, the ADA was not at issue in the prior HUD complaint against the HOA. Specifically, the complaint by Segal and Davis noted that "Complainants state they are persons with disabilities as defined by the Act, and they require emotional support animals (one dog each) for their disabilities."

84.     Defendants have refused to produce any documentation substantiating their claimed exemption from ADA compliance, despite requests by Plaintiff's counsel. This continued lack of transparency reflects a broader pattern of misconduct.

85.

86.     Despite requests by Plaintiff's counsel, Defendants have failed to produce any documentation supporting their claimed ADA exemption and/or approval from the Department of Justice.

87.     Defendants asserted, through their actions, that they were entitled to demand Plaintiff's personal records and other documentation in

order to determine whether his service dog would be accommodated, despite such demands exceeding what is permitted under the ADA.

88.    At the time, Plaintiff relied in good faith on Defendant Mark Sullivan's representation, made *via* email from a law firm, that the policy had been approved by the Department of Justice, and acted accordingly based on that assertion.

89.    As a direct result of this misrepresentation, Plaintiff was forced to vacate his residence and seek alternate housing, or alternatively, disclose private medical information to a board that included members who had already demonstrated hostility and discriminatory intent toward him without any affirmative assurance of confidentiality.

90.    As a direct result of Defendants' refusal to provide a reasonable accommodation, Plaintiff was forced to vacate his residence, resulting in significant emotional distress and financial harm.

91.    Teton County, Wyoming, is a high-cost housing market with limited availability, particularly for working individuals.

92.    As a result, in April 2024 Plaintiff was forced to relocate to Lincoln County, Wyoming in order to secure accessible and affordable housing.

93.    In 2024, Plaintiff informed Defendants Marc Segal and Paul Pescatello that Defendant Mark Sullivan had misrepresented the existence of a DOJ exemption.

94.    In response, Defendant Paul Pescatello averred that HUD was lying to Congress, rather than conceding that the HOA might be wrong about the ADA exemption.

95.    Despite denying Plaintiff access to HOA facilities, Defendants continued to charge him full HOA fees, effectively requiring payment for services from which he was excluded. This conduct constitutes a breach of their contractual obligations and further underscores the discriminatory treatment Plaintiff experienced.

96.    To date, Defendants have never alleged that Plaintiff's service dog posed any danger or nuisance.

97.    Under 28 C.F.R. § 36.302(c)(2), a public accommodation may only ask an individual with a disability to remove a service animal from the premises if: (i) The animal is out of control and the animal's handler does not take effective action to control it; or (ii) the animal is not housebroken.

98.    At no time have Defendants alleged that Plaintiff's service dog was out of control, not housebroken, or posed any danger to others.

99.    At least one other dog—permitted by the HOA Board to be at Spring Creek Ranch despite not being a service animal—has killed at least one cat and poses a serious danger to residents and other animals.

100.    Even if Plaintiff's service dog had lawfully been excluded, Defendants failed to provide Plaintiff with the opportunity to access goods,

services, and accommodations without the animal on the premises, as required by 28 C.F.R. § 36.302(c)(3).

101.    Defendants have no policy in place to comply with 28 C.F.R. § 36.302(c)(3).

102.    In 2024, Plaintiff filed a formal complaint with the U.S. Department of Housing and Urban Development (HUD), alleging disability-based discrimination and the denial of a reasonable accommodation by Defendants.

103.    A 2025 letter from Spring Creek Ranch Management, drafted by Derek Goodson to HUD, confirmed that Plaintiff's service dog was never considered a nuisance, let alone a danger.

104.    Shortly after that letter was submitted to HUD, the HOA terminated its relationship with Spring Creek Ranch Management Company.

105.    By 2025 Defendant Sullivan had clearly failed to conduct reasonable due diligence before once again communicating the existence of a DOJ mandate, and repeated that false representation to Plaintiff's counsel knowing full well that Plaintiff was in a protected class under the FHA and ADA.

106.    Defendant Sullivan acted under a conflict of interest, by simultaneously representing the HOA corporation, the HOA board, and at least also having an attorney client relationship with Defendant Kallop if not others within the HOA. Defendant Sullivan chose to remain loyal to the

21

board and his personal client(s) rather than the corporation and its members. Thus he continued the deception to protect himself and the board rather than complying with federal law and ending the discrimination.

107.    Defendant Sullivan continued to act as both board and corporate counsel even as there was litigation between a board member and the corporation.

108.    Defendants continued to exempt other individuals residing or staying within the HOA from the level of scrutiny and documentation imposed on Plaintiff, further evidencing unequal treatment and selective enforcement. This is exemplified by a February 2025 email from Raul Velasquez, an agent of board member and Defendant David Silva, confirming that ADA standards are followed for hotel guests.

109.    Defendants, through counsel, continued to assert that they had been granted an exemption from ADA compliance by the DOJ despite refusing to provide any evidence of it.

110.    Defendants continue to assess fees against Plaintiff for access to HOA facilities from which he has been excluded under an apparently facially illegal service dog policy, constituting an ongoing breach of contract and a continuing violation of the ADA.

111.    Defendants have requested extensions of time to respond to HUD but have refused to acknowledge or reply to correspondence regarding

22

the preservation of relevant documents, suggesting possible bad faith in their handling of this matter.

112.   As of April 2025, HUD informed Plaintiff that, despite efforts by its assigned investigator to engage the Defendant HOA and facilitate a resolution, the HOA failed to provide any response or indication of willingness to participate in the voluntary HUD mediation process.

## CLAIMS FOR RELIEF

## <u>Count I</u>

## **Violation of the ADA – All Defendants**

113.   Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

114.   Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.*, including later amendments, prohibits any "public accommodation" from discriminating on the basis of disability.

115.   Plaintiff is a qualified individual with a disability who is entitled to the use of a service animal under the ADA.

116.   Defendants operate a place of public accommodation and unlawfully denied Plaintiff equal access and a reasonable accommodation by prohibiting the use of his service dog and imposing unlawful documentation requirements. As an attorney representing a corporate entity that governs a residential community, Defendant Sullivan owed duties to the members of

the HOA, including Plaintiff, to investigate and verify legal representations he made with the intention that they rely on him.

117.    As a direct result of Defendants' actions and omissions, Plaintiff suffered emotional distress, financial harm, and a constructive loss of housing.

118.    Plaintiff seeks to enjoin Defendants from further violating Title III of the ADA.

## Count II

### Violation of the Fair Housing Act – All Defendants

119.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

120.    Defendant HOA is governed by the FHA, 42 U.S.C. § 3601, *et seq*.

121.    Plaintiff's residence at Spring Creek Ranch falls within the scope of the Fair Housing Act.

122.    Defendants requested information and sought to conduct an approval process for Plaintiff's service animal that was contrary to the FHA's requirements.

123.    As an individual with a disability, Plaintiff was entitled to a reasonable accommodation under the FHA without being required to submit to an invasive or burdensome petition process—particularly after the

accommodation had already been approved through a more straightforward procedure.

124.    As a direct result of Defendants' conduct, Plaintiff suffered emotional distress, financial harm, and displacement from his home.

## Count III

### Breach of Contract – Spring Creek HOA

125.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

126.    When Plaintiff moved to the community and agreed to be bound by the HOA's governing documents, Spring Creek Ranch Management — acting on behalf of the HOA — accepted Plaintiff's service dog.

127.    Plaintiff reasonably and detrimentally relied on the HOA's prior approval of his service dog when electing to purchase his residence and accept the HOA's covenants, conditions, and restrictions.

128.    Defendant HOA, through a pattern of hostile actions, discriminatory confrontations, and refusal to honor the prior approval of Plaintiff's service dog, violated the terms and spirit of the governing documents by making the community unsafe and unwelcoming for Plaintiff, thereby breaching its contractual obligations.

129.    Defendants refuse to let Plaintiff use public facilities in violation of the contract.

130.    Defendant HOA attempted to conceal its breach of contract from Plaintiff by making misrepresentations intended to justify its violation of his contractual rights—falsely asserting that it had been exempted from ADA compliance by the DOJ and that the Scott Segal Scott Segal and Robin Davis settlement had been mandated by a federal agency. These misrepresentations were made in an effort to make Plaintiff feel unwelcome in the community and to lead him to believe he was legally required to leave, when in fact the HOA had simply and unilaterally breached its agreement.

131.    As a direct result of Defendant's breach of contract, Plaintiff has suffered financial losses and other damages, the full extent of which will be established at trial.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the following relief:

A.    Declare that Defendants' actions violated the ADA;

B.    Declare that Defendants' actions violated the FHA;

C.    Award Plaintiff damages for breach of contract;

D.    Enter an injunction requiring Defendants to comply with federal disability law, including appropriate accommodation policies;

E.    Award Plaintiff compensatory damages for emotional distress, out-of-pocket expenses, moving expenses, HOA fees, and other losses;

F.    Award punitive damages in light of Defendants' intentional misrepresentations and knowing violations of federal law;

26

G.    Award reasonable attorneys' fees and costs;

H.    Grant such other and further relief as the Court deems just and

proper.


/s/ John Knepper

John Knepper
Law Office of John G. Knepper, LLC
P.O. Box 1512
Cheyenne, Wyoming 82003
307-632-2842
John@KnepperLLC.com

/s/ Aaron T. Martin

Aaron T. Martin
Martin Law & Mediation, PLLC
2415 E. Camelback Rd., Suite 700
Phoenix, Arizona 85016
602-812-2680
aaron@martinlawandmediation.com
*Pro hac vice motion forthcoming*

Attorneys for Plaintiff

27